UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHAEL REID and ONEIL BROWN,

                    Plaintiffs,

            -against-                                    15-CV-2358-SJB


TELENTOS CONSTRUCTION CORP., TOMMY
DEMONERIS, DAN YANT, INC., DANIEL NYANTE,
COLONIAL SURETY COMPANY, and PARTNERRE
INSURANCE COMPANY OF THE U.S.,

                    Defendants.
-------------------------------------------------------------------X          **OPINION & ORDER**
-------------------------------------------------------------------X
COLONIAL SURETY COMPANY and PARTNERRE
INSURANCE COMPANY OF NEW YORK,

                    Third-Party Plaintiffs,

            -against-                                    15-CV-2358-SJB


SOPHIA DEMONERIS,
                    Third-Party Defendant.
-------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        Colonial Surety Company ("Colonial") moves for partial summary judgment

against Tommy and Sophie Demoneris (collectively, "the Demoneris Defendants") for

indemnification, seeking attorney's fees and costs pursuant to construction surety bonds

issued on behalf of Telentos Construction Corp. ("Telentos") and incurred in defending

the underlying Fair Labor Standards Act ("FLSA") action.  (Mot. for Partial Summ. J.

dated Sept. 20, 2019 ("Mot."), Dkt. No. 134).  For the reasons stated below, the motion

is granted in part and denied in part.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record, "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* r. 56(c)(1)(A). Alternatively, it may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* r. 56(c)(1)(B).

In moving for summary judgment or answering such a motion pursuant to Federal Rule of Civil Procedure 56, litigants in this District are required by the Local Rules to provide a statement setting forth purported undisputed facts or, if

controverting any fact, responding to each assertion.  *See* Local Civil Rule 56.1.  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* r. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

"Where genuinely disputed, 'the Court will consider the sources for the claims made in dueling Rule 56.1 Statements . . . , rather than rely on the Rule 56.1 Statements themselves[.]'" *Halberg v. United Behavioral Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (quoting *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015)) (alteration in original), *appeal withdrawn*, 2020 WL 1987820 (2d Cir. Mar. 18, 2020) .  In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses.  *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).  Legal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded.  *See Congregation Rabbinical Coll. of Tartikov, Inc.*, 138 F. Supp. 3d at 394 ("[T]he Court can . . . disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement."); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1.  The facts . . . are taken from

those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)).  The Court must also disregard conclusory denials that contain no citations to admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument*.  They should contain factual assertions, with citation to the record.  They should not contain conclusions[.]"(emphasis in original)), *aff'd*, 56 F. App'x 27 (2d Cir. 2003).  Further, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Local Civil Rule 56.1(c).  The court does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("'[A] non-moving party must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139 (2d Cir. 2009).

FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, based on the review of the depositions, declarations, exhibits, pleadings, and other evidence, the Court has determined the following material facts are beyond genuine dispute and supported by admissible evidence.  Where a relevant genuine dispute exists, the Court highlights both parties' versions of the facts.  The Court does not consider portions of the parties' Rule 56.1 statements that are legal

conclusions, irrelevant, or merely objections to inferences drawn from the opposing party's statements.  Statements to which the opposing party did not respond are deemed admitted.

Defendant, Cross-Claimant, and Third-Party Plaintiff Colonial is an insurance and bond company incorporated in Pennsylvania and has its principal place of business in New Jersey.  (*See* Colonial Surety Company's Answer and Affirmative Defenses to Second Am. Compl. with Cross-Cls. and Third-Party Compl., dated Feb. 17, 2017 ("Colonial's Third-Party Compl."), Dkt. No. 37 at 27, ¶ 3).  The residential and business addresses of the Demoneris Defendants are in Brooklyn, New York. (*See id.* at 27, ¶¶ 6, 9; General Indemnity Agreement dated Nov. 21, 2008 ("Indemnity Agreement"), attached as Ex. A to Mot., Dkt. No. 134 at 3).  Telentos is a construction company "involved in the [h]eating, [v]entilation and [a]ir [c]onditioning business in the New York area."  (Colonial's Third-Party Compl. at 27, ¶ 5; Second Am. Compl. dated Nov. 24, 2016 ("Second Am. Compl."), Dkt. No. 29 ¶ 17).  Tommy Demoneris is involved in the management and operations of Telentos.  (Second Am. Compl. ¶¶ 11, 17–21).

Telentos obtained surety construction bonds for a construction project with the Metropolitan Transportation Authority ("MTA") to renovate the JFK Bus Depot (the "Project").  (*See* Colonial Surety Company's Statement of Material Facts Pursuant to Local Civil Rule 56.1 dated Sept. 20, 2019 ("Colonial's 56.1 Stmt."), attached to Mot., Dkt. No. 134 ¶¶ 4–5; Demoneris Defs.' Resps. to Third-Party Pl.'s Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Demoneris Defs.' 56.1 Stmt."), attached to Mot., Dkt. No. 134 ¶¶ 4–5; Aff. of Wayne Nunziata in Supp. of Mot. dated Sept. 20, 2019 ("Nunziata Aff."), attached to Mot., Dkt. No. 134 ¶¶ 8–9).

On September 8, 2010, Colonial and PartnerRe Insurance Company of New York ("Partner"), acting as co-sureties, issued Bond No. CSC-218822 on behalf of Telentos. (Colonial's 56.1 Stmt. ¶ 5; Demoneris Defs.' 56.1 Stmt. ¶ 5; Colonial Surety Company's Resp. to Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1 dated Feb. 28, 2020 ("Colonial's 56.1 Resp. Stmt."), attached to Mot., Dkt. No. 134 ¶ 3; Bond No. CSC-218822 dated Sept. 8, 2010 ("Bond No. CSC-218822"), attached as Ex. O to Mot., Dkt. No. 134).  The bond consisted of a performance bond and a payment obligation, in the amount of $7,999,500 (the "Surety Bond").[1]  (Bond No. CSC-218822 at 1).  Under the terms of the Surety Bond, Telentos was obligated to pay all claims for "[w]ages and compensation for labor performed" on the Project.  (*Id.* at 2).  Any person who worked on the Project had the right to sue Telentos or Colonial (or both) for failure to pay such wages.  (*Id.*)

On November 21, 2008, the Demoneris Defendants executed the Indemnity Agreement, in which they agreed to indemnify Colonial in connection with surety bonds written on behalf of Telentos.  (Colonial's 56.1 Stmt. ¶ 1; Demoneris Defs.' 56.1 Stmt. ¶ 1; *see* Indemnity Agreement).  Under the Indemnity Agreement, Colonial had "the right in its sole discretion to determine whether any claims" under the Surety Bond "shall be paid."  (Indemnity Agreement ¶ 4(A)).  The Demoneris Defendants agreed to indemnify Colonial for costs and fees arising from actions brought to enforce the obligations under

---

[1] A performance bond is "[a] third party's agreement to guarantee the completion of a construction contract upon the default of the general contractor." *Performance Bond,* Black's Law Dictionary (11th ed. 2019).  A payment bond is "[a] written promise to pay money or do some act if certain circumstances occur or a certain time elapses[.]" *Payment Bond,* Black's Law Dictionary (11th ed. 2019).

the Surety Bond, (*see* Colonial's 56.1 Stmt. ¶¶ 1–3; Demoneris Defs.' 56.1 Stmt. ¶¶ 1–3):

they agreed

> to indemnify and save harmless [Colonial] from and against any and all (i) demands, liabilities, losses, costs, damages or expenses of whatever nature or kind, including all fees of attorneys and all other expenses, including but not limited to costs and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of Bonds, enforcement of any Contract with [Telentos and the Demoneris Defendants], and in attempting to recover losses of expenses from [Telentos and the Demoneris Defendants], or third parties, whether or not [Colonial] shall have paid out any or all of such sums, (ii) amounts sufficient to discharge any claim made against [Colonial] on any Bond, which amounts may be used by [Colonial] to pay such claim, or may be held by [Colonial] as collateral security against any loss on any Bond, and (iii) any premiums due on Bonds issued by [Colonial] on behalf of [Telentos].

(Indemnity Agreement ¶¶ 1, 3).

The Indemnity Agreement gives Colonial the right to incur expenses (including legal fees and costs) "it deems necessary or advisable" for handling a claim made on the Surety Bond; its "good faith determination" of expenses are "final and conclusive," and, therefore, binding on the Demoneris Defendants.  (*Id.* ¶ 4(B) ("Surety shall have the right to incur such expenses in handling a claim as it deems necessary or advisable, including but not limited to the expense for investigation, accounting, engineering and legal services, and Surety's good faith determination as to the necessity or advisability of any such expense shall be final and conclusive upon Indemnitor.")).  Colonial's right to recovery is not dependent upon whether it decides to pay a claim made on the bond. (*Id.* at ¶ 4(E) ("Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety.  Surety may recover from Indemnitor its expenses and attorneys' fees incurred in prosecuting or defending any action arising out of or relating to this Agreement or other Contract with Indemnitor.")).  To recover expenses, Colonial only

7

needs to, in the first instance, provide "an itemized statement" sworn to by any officer or "vouchers or other evidence of" the payments made by Colonial.  (*Id.* ¶ 4(D) ("In any claim or suit hereunder, an itemized statement of the aforesaid loss and expense, sworn to by an officer of Surety, or vouchers or other evidence of disbursements by Surety, shall be prima facie evidence of the fact and extent of the liability of Indemnitor."); *see also* Colonial's 56.1 Stmt. ¶ 3; Demoneris Defs.' 56.1 Stmt. ¶ 3).

If a party brought a claim under the Surety Bond, Colonial had the right to request collateral from the Demoneris Defendants to defend against the claims. (Indemnity Agreement ¶ 7 ("If a claim is made against Surety, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, Indemnitor shall immediately deposit with Surety cash or other property acceptable to Surety, as collateral security, to protect Surety with respect to such claim or potential claims and any anticipated expense or attorneys' fees.")).  If the Demoneris Defendants refused to post such collateral, they would be in material breach, (*see id.* ¶ 5(E)), and Colonial could take certain actions, including initiating litigation to enforce the agreement, (*id.* ¶ 6(E)).

On April 24, 2015, Plaintiffs Michael Reid and Oneil Bowen ("Plaintiffs") filed suit against defendants Telentos, Dan Yant, Inc., Tommy Demoneris, and Daniel Nyante, claiming they were entitled to, *inter alia*, (1) unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 21 U.S.C. §§ 201, *et seq.*; (2) unpaid overtime wages pursuant to the New York Minimum Wage Act, N.Y. Lab. Law §§ 650, *et seq.*; (3) outstanding wages pursuant to the relevant wage contracts; and (4) outstanding wages, including overtime and non-overtime wages, pursuant to New York Labor Law §§ 190, 191, 193, 195, and 198, for their work on the renovation of the JFK Bus Depot.  (Compl.

dated Apr. 24, 2015 ("Compl."), Dkt. No. 1 ¶¶ 1–4, 20–22, 54–55, 59–60, 62–64, 69–76).  On November 24, 2016, Plaintiffs filed a Second Amended Complaint, which added Colonial and Partner as defendants and asserted the same causes of action.  (*See* Second Am. Compl.; Colonial's 56.1 Stmt. ¶ 6; Demoneris Defs.' 56.1 Stmt. ¶ 6).  Colonial and Partner filed cross-claims against Tommy Demoneris and a third-party complaint against Sophia Demoneris on February 17, 2017, seeking, *inter alia*, indemnification and specific performance under the Indemnity Agreement.  (*See* Colonial's Third-Party Compl.)

Colonial was added, therefore, in an attempt to hold it responsible for Telentos' alleged failure to pay wages and to make a claim under the Surety Bond.  (*See* Second Am. Compl. ¶ 84 (seeking declaration "that the Surety defendants ([Colonial] and [Partner]) are liable and responsible for the wages owed to Plaintiffs").  Because the lawsuit was a claim under the Surety Bond, Colonial sought $100,000 in collateral from the Demoneris Defendants pursuant to the terms of the Indemnity Agreement.  (Letter from Colonial Surety Company to Telentos Construction Corp., Tommy Demoneris, and Sophia Demoneris dated Feb. 16, 2017 ("Demand Letter"), attached as Ex. D to Mot., Dkt. No. 134 at 1; *see also* Colonial's 56.1 Stmt. ¶ 7; Demoneris Defs.' 56.1 Stmt. ¶ 7).  Colonial advised that if the Demoneris Defendants failed to post the collateral, Colonial would "take steps to protect its interests under the Indemnity Agreement."  (Demand Letter at 3).  The Demoneris Defendants did not post any collateral.  (Colonial's 56.1 Stmt. ¶ 8; Demoneris Defs.' 56.1 Stmt. ¶ 8; Nunziata Aff. ¶ 15).

As a result, Colonial sued the Demoneris Defendants.  (Colonial's Third-Party Compl. at 32, ¶¶ 23–24).  Ultimately, Colonial asserted nine causes of action in its Third-Party Complaint: (1) specific performance of the Indemnity Agreement for breach

of contract for the failure to post collateral; (2) specific performance for breach of contract for the failure to allow Colonial to inspect books and records; (3) contractual indemnification for losses, costs, and expenses in connection with the Surety Bond; (4) exoneration and indemnification from Telentos and Dan Yant, Inc. for losses incurred under the Surety Bond; (5) *quia timet* relief from Telentos pursuant to the Indemnity Agreement; (6) common law indemnification to discharge all obligations arising under the Surety Bond; (7) damages for losses due to subrogation against Telentos and Dan Yant, Inc.; (8) damages for losses due to subrogation to trust fund beneficiaries; and (9) damages for Telentos' and the Demoneris Defendants' breach of trust fund obligations.[2] (Colonial's Third-Party Compl. at 32–39, ¶¶ 26–64).  The law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC") represents Colonial.  (Colonial's 56.1 Stmt. ¶ 11; Demoneris Defs.' 56.1 Stmt. ¶ 11).

The underlying wage and hour case ultimately settled (*see* Stip. of Dismissal with Prejudice dated July 19, 2019, Dkt. No. 126), and the Demoneris Defendants paid $140,000 to Plaintiffs, (Demoneris Defs.' 56.1 Stmt. at 8, ¶ 4; Colonial's 56.1 Resp. Stmt. ¶ 4; Settlement Agreements and Releases dated Apr. 9, 2019, Dkt. No. 118).

---

[2] Colonial's Third-Party Complaint seeks numerous forms of relief, including, *inter alia*, injunctive relief preventing the Demoneris Defendants from concealing or transferring assets until Colonial's liabilities from the underlying action had been discharged; collateral for claims against the Surety Bond; full access to the Demoneris Defendants' financial information; contractual and common law indemnification for attorney's fees, costs, expenses and interest; a declaration that the Demoneris Defendants are jointly and severally liable for Colonial's incurred losses and expenses; a discharge of Telentos' claims against Colonial and Partner; reimbursement from Telentos for any outlays; full access to Telentos' financial information; subrogation equal to the amount of any trust funds that the Indemnitors fail to pay; an order to compel parties to perform under the Indemnity Agreement; and attorney's fees and costs of suit.  (Colonial's Third-Party Compl. at 39–45).

Colonial's Motion for Summary Judgment seeks indemnification from the Demoneris Defendants for "all losses, costs and expenses incurred as a result of Colonial's issuance of bonds on behalf of Telentos." (Colonial Surety Company's Mem. of Law in Supp. of Its Mot. for Partial Summ. J. dated Sept. 20, 2019 ("Mem. in Supp."), attached to Mot., Dkt. No. 134 at 1). Specifically, Colonial requests reimbursement of $317,920.43 through June 30, 2019: $303,692.72 in attorney's fees, $12,990.84 in accounting consulting costs, and $2,008.80 in deposition costs. (*Id.* at 7, 13).[3] Colonial does not specify on which claim(s) it is seeking summary judgment; the Court concludes, based on both parties' briefing, that Colonial seeks partial summary judgment on the Third Count of the Third-Party Complaint, "Contractual Indemnification." (Colonial's Third-Party Compl. at 34, ¶¶ 36–40).[4]

### DISCUSSION

"[A] motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co. v. Cadbury Stani*

---

[3] Colonial, alone, moves for partial summary judgment. Partner has not joined in this motion.

[4] Although the third cause of action is brought against Telentos and the Demoneris Defendants, Colonial's motion only seeks relief from the Demoneris Defendants. (*Compare* Mem. in Supp. at 1 ("[Colonial] files this motion for partial summary judgment against Tommy Demoneris and Sophia Demoneris[.]"), *with* Colonial's Third-Party Compl. at 34, ¶¶ 36–40). No relief is sought from Telentos.

*S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (interpreting New York law).[5]  "Ambiguity here is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way."  *Id.*

The language of the Indemnity Agreement is unambiguous and can be interpreted as a matter of law.  The Indemnity Agreement provides that the Demoneris Defendants shall indemnify Colonial for "expenses" arising from any "claims, procuring or attempting to procure the discharge of" the Surety Bond. (Indemnity Agreement ¶¶ 3, 4(E)).  The underlying FLSA action—in which Plaintiffs named Colonial as a defendant—was a "claim" attempting to collect unpaid wages under the Surety Bond.  Plaintiffs sued Telentos, Dan Yant, Inc., Tommy Demoneris, and Daniel Nyante, in part, for unpaid wages for their work on the Project.  (Compl. ¶¶ 1–4, 20–22, 54–55, 59–60, 62–64, 69–76).  And Plaintiffs turned around to sue Colonial and Partner to seek recovery under the Surety Bond for the wages.  (Second Am. Compl. ¶ 84).  Under the

---

[5] The parties rely on New York law without explaining their choice.  Colonial is incorporated in Pennsylvania and has its principal place of business in New Jersey, (*see* Colonial's Third-Party Compl. at 27, ¶ 3; Bond No. CSC-218822), but Colonial did not dispute the application of New York law, (*see generally* Mem. in Supp.).  As a result, and in the absence of any public policy to the contrary, the Court applies New York law.  *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied."); *e.g., Blodgett v. Siemens Indus., Inc.*, No. 13-CV-3194, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("Plaintiffs' . . . citation solely to New York law in support of their . . . claims in their prior submissions is deemed by this Court to constitute an implied consent to use New York law, which settles the choice of law issue in favor of the application of New York law."); *Travelers Indem. Co. v. Harrison Constr. Grp. Corp.*, No. 06-CV-4011, 2008 WL 4725970, at *3 n.5 (E.D.N.Y. Oct. 22, 2008) (applying New York law where both parties "almost exclusively" relied on New York law in their briefs, the parties resided or were incorporated in New York, and the indemnification agreement was executed in New York).

Indemnity Agreement, Colonial may seek reimbursement for all "expenses" incurred in defending such a claim.  (Indemnity Agreement ¶ 4(E)).

The Demoneris Defendants do not dispute any of the foregoing.  That is, they do not contest that the lawsuit is a "claim" under the Surety Bond; that Colonial is entitled to reimbursement for expenses for investigating and defending this claim; that any of the relevant provisions of the Indemnity Agreement are ambiguous; or, that by not paying Colonial, the Demoneris Defendants breached the Indemnity Agreement.  As discussed below, they only contest whether the expenses were incurred in good faith and reasonable.  Such arguments are not defenses to a breach of contract claim, but impact the damages to be awarded.  As such, Colonial is entitled to summary judgment on the Third Count of the Third-Party Complaint for indemnification following breach of contract.  *See, e.g.*, *N. Am. Specialty Ins. Co. v. Montco Constr. Co.*, No. 01-CV-246, 2003 WL 21383231, at *7 (W.D.N.Y. May 9, 2003) ("In sum, the Court finds that [the defendant] breached the Indemnity and Settlements clauses of the Indemnity Agreement by failing to post collateral or otherwise exonerate and indemnify [the plaintiff] for its losses incurred as a result of issuing Bond No. 158422.").

As to which expenses Colonial is entitled to recover and the amount to be awarded, the Demoneris Defendants agreed to indemnify Colonial for

> expenses of whatever nature or kind, including all fees of attorneys and all other expenses, including but not limited to costs and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of Bonds, enforcement of any Contract with Indemnitor, and in attempting to recover losses of expenses from Indemnitor, or third parties, whether or not Surety shall have paid out any or all of such sums[.]

(Indemnity Agreement ¶ 3).  If Colonial either submits "an itemized statement of the . . . loss and expense, sworn to by an officer of [Colonial], or . . . vouchers or other evidence

13

of disbursements by [Colonial]," this is *prima facie* evidence of the expenses for which it is entitled to indemnification.[6]  (*Id.* ¶ 4(D)).

Colonial filed an itemized statement (the "Itemized Statement of Loss") enumerating the attorney's fees, accounting consulting costs, and other litigation costs that it incurred.  (Itemized Statement of Loss, attached as Ex. E to Mot., Dkt. No. 134). The Itemized Statement of Loss provides the payee, the date of each payment, the period the payment covered, the check number, the amount of payment, and the invoice number.  (*Id.*)  In total, the Itemized Statement of Loss indicates Colonial paid $303,692.79 to MDMC, $12,990.84 in accounting consulting costs, and $1566.80 in deposition costs ($2,008.80 in costs, less a $442.00 credit).  (*Id.*)  The Itemized Statement of Loss does not contain copies of sent checks or other evidence of payment. (*Id.*)

Colonial also submitted an affidavit of its president, Wayne Nunziata, that avers that the amounts in the Itemized Statement of Loss were paid: (1) "Colonial has paid MDMC $303,362.79 for legal services rendered from November 1, 2013 through June 30, 2019, in connection with defending the Litigation against the Bond and in connection with Colonial's enforcement of its rights under the Indemnity Agreement,"

---

[6] New York courts have "upheld the efficacy of such 'prima facie' clauses, recognizing that such an itemized statement of loss and expenses may properly constitute prima facie evidence of entitlement to indemnification, as well as the amount to be indemnified." *Colonial Sur. Co. v. Millennium Century Constr., Inc.*, No. 650379/2012, 2014 WL 3929159, at *3 (N.Y. Sup. Ct. Aug. 12, 2014) (interpreting indemnity agreement which provided that "[i]n any claim or suit hereunder, an itemized statement of the aforesaid loss and expenses, sworn to by an officer of Surety, or the vouchers or other evidence of disbursement by surety, shall be prima facie evidence of the fact and extent of the liability hereunder of Indemnitor" (alteration in original)). The Demoneris Defendants do not challenge the validity of the Indemnity Agreement's *prima facie* clause.

(Nunziata Aff. ¶ 19); (2) "Colonial has paid [the accounting firm Matson, Driscoll & Damico (f/k/a Smart Devine) ("MDD")] $12,990.84 for accounting services rendered October 1, 2013 through June 30, 2019 in this and other Telentos-related matters," (*id.* ¶ 22); and (3) "Colonial paid $2,008.80 to LEX Reporting Service, Inc. for transcription services in connection with the depositions of the Plaintiffs," (*id.* ¶ 23).

The Demoneris Defendants contend that these documents are insufficient to recover expenses under the Indemnity Agreement. They argue that Colonial has neither produced nor submitted billing statements, invoices, or copies of checks. (Demoneris Defs.' Mem. of Law in Opp'n to Mot. ("Mem. in Opp'n"), attached to Mot., Dkt. No. 134 at 3–4; Aff. of Tommy Demoneris dated Jan. 27, 2020, attached to Mot., Dkt. No. 134 ¶¶ 6–10; Aff. of Sophia Demoneris dated Jan. 27, 2020, attached to Mot., Dkt. No. 134 ¶¶ 6–10; Aff. of Marc J. Monte dated Jan. 30, 2020, attached to Mot., Dkt. No. 134 ¶ 7).[7] The argument has no merit. Under the Indemnity Agreement, to establish a *prima facie* entitlement to payment, Colonial was not required to provide the underlying billing statements, invoices, or checks. Colonial had three options to satisfy its *prima facie* obligation: (1) an itemized statement of expenses sworn by its officer; or evidence of disbursement in the form of (2) vouchers; or (3) "other evidence." (Indemnity Agreement ¶ 4(D)). First, Colonial provided the Itemized Statement of Loss; however, the Statement is not sworn and therefore does not qualify as a sufficient *prima facie* evidence. *Colonial Sur. Co. v. A&R Cap. Assocs.*, 420 F. Supp. 3d 38, 43 (E.D.N.Y. 2017) (denying summary judgment because, "[u]nder the terms of the Indemnity

---

[7] "Colonial admits that it did not produce status reports to the [Demoneris Defendants] during the pendency of the [underlying FLSA] litigation," but states it produced these documents during discovery in its litigation against the Demoneris Defendants. (Colonial's 56.1 Resp. Stmt. ¶ 5).

Agreement, only an itemized list 'sworn to by an officer' will suffice as prima facie evidence of the extent of liability.  The itemized statement in this case was submitted as an exhibit to the sworn affidavit of Wayne Nunziata, the President of Colonial Surety Company.  Although the affidavit was sworn to by Mr. Nunziata, the itemized statement itself was not.").  Second, the Nunziata Affidavit avers that the expenses were paid by Colonial.  (Nunziata Aff. ¶¶ 19, 22, 23).  This is sufficient "other evidence" to make out a *prima facie* right to reimbursement from the Demoneris Defendants under the Indemnity Agreement.  Courts analyzing similar clauses in indemnity agreements are in accord.  *See, e.g.*, *John Deere Ins. Co. v. GBE/Alasia Corp.*, 57 A.D.3d 620, 621 (2d Dep't 2008) ("[P]laintiff made a prima facie showing of entitlement to summary judgment on the first cause of action and as to the issue of liability on the second cause of action by, inter alia, submitting an affidavit by Gary Mitchell, a consultant who worked on the plaintiff's account for the firm that handled claims against surety bonds executed by the plaintiff, which established the amount of payments made by the plaintiff under the bond at issue.").

Colonial had the right to incur expenses that "it deems necessary or advisable" and its "good faith determination as to the necessity or advisability of any such expense" is "final and conclusive" upon the Demoneris Defendants.  (Indemnity Agreement ¶ 4(B)).  Courts interpreting similar provisions have found it appropriate to consider an indemnitor's good faith and reasonableness challenge to the amount of expenses.  *See, e.g.*, *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 12 A.D.3d 891, 892 (3d Dep't 2004) (collecting cases and stating that "such provisions mean that the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount"); *Safeco Ins. Co. v. M.E.S., Inc.*, No. 09-CV-3312, 2017 WL

1194730, at *3, *12 (E.D.N.Y. Mar. 30, 2017) (denying summary judgment to defendants

who failed to establish bad faith or unreasonableness where the indemnity agreement

provided that surety was "empowered to incur such expenses, including reasonable

attorneys' fees, as deemed necessary or advisable in the investigation, defense and

payment of" claims on the bond and surety's "determination in good faith . . . shall be

final and conclusive" (alteration in original) (quotation omitted)), *aff'd*, 910 F.3d 705

(2d Cir. 2018).  "[I]n the surety-indemnification context, New York courts have equated

'bad faith' with 'fraud or collusion.'"  *Travelers Indem. Co.*, 2008 WL 4725970, at *5

(quoting *Peerless Ins. Co. v. Talia Constr. Co.*, 272 A.D.2d 919, 919 (4th Dep't 2000)).

The Demoneris Defendants suggest that MDMC represented not only Colonial,

but also all defendants in the underlying action, and thus their expenses were incurred

in bad faith.  (Mem. in Opp'n at 2.)  The assertion is unfounded: the Demoneris

Defendants offer no evidence to support their allegation, and the Docket indicates that

MDMC's lawyers only made appearances on behalf of Colonial and Partner.  (*See* Notice

of Appearance by Dennis O'Neil Cowling on behalf of Colonial Surety Company, Dkt.

No. 55; Notice of Appearance by Dennis O'Neil Cowling on behalf of PartnerRe

Insurance Company of New York, Dkt. No. 56).

The Demoneris Defendants also make various arguments challenging the

reasonableness of the expenses.  The Demoneris Defendants are, in essence, asking the

Court to conduct a freestanding reasonableness inquiry and to use its judgment to cut

down the expenses incurred by Colonial.  But Colonial is not submitting a fee

application for Court approval.  Instead, it is seeking to enforce a contract, one that only

provides for disallowing expenses incurred in "bad faith."  The Indemnity Agreement

provides that Colonial's "good faith" determination on the advisability of expenses is for

17

Colonial to make, and such a determination is "final" and "conclusive." (Indemnity Agreement ¶ 4(B)). In other words, under the Indemnity Agreement, absent bad faith, a naked assertion of unreasonableness cannot defeat Colonial's entitlement to expense reimbursement. Without showing bad faith, no reduction in the indemnification obligation is appropriate. Courts routinely award indemnification without conducting a freestanding examination of expenses incurred.[8] *See, e.g., Colonial Sur. Co.*, 2014 WL 3929159, at *7; *Int'l Fid. Ins. Co. v. Kulka Constr. Corp.*, 100 A.D.3d 967, 968 (2d Dep't 2012); *Prestige Decorating & Wallcovering, Inc. v. U.S. Fire Ins. Co.*, 49 A.D.3d 406, 406–07 (1st Dep't 2008).

Furthermore, the Demoneris Defendants' specific "reasonableness" challenges are without merit. First, the Demoneris Defendants contest the legal fees on the grounds that their counsel billed only one-tenth of what Colonial's counsel did. (Mem. in Opp'n at 1). But they provide no argument why such a fee comparison is the proper means to measure reasonableness under the Indemnity Agreement. It is not. The Indemnity Agreement contains no comparison requirement or benchmark. As noted, the Demoneris Defendants must show "bad faith" to establish that expenses incurred were unreasonable. And with the respect to the legal fees, the Demoneris Defendants have not made such a showing. Colonial provided a rationale for the number of hours

---

[8] In arguing that Colonial was obliged to prove reasonableness, the Demoneris Defendants misapprehend the Indemnity Agreement. The cases the Demoneris Defendants rely upon for such a proposition are inapposite, since they do not pertain to indemnification agreements. (*See* Mem. in Opp'n at 6–7 (citing, for example, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008); *Diggs v. Oscar De La Renta, LLC*, 169 A.D.3d 1003 (2d Dep't 2019); *RMP Cap. Corp. v. Victory Jet, LLC*, 139 A.D.3d 836 (2d Dep't 2016)). And under the Indemnity Agreement, it is not Colonial's obligation to prove that the fees and costs sought are reasonable, but rather the Demoneris Defendants' burden to demonstrate bad faith.

billed, including the failure of the Demoneris Defendants to post collateral, which required Colonial's counsel to both defend against Plaintiff's claims and seek indemnification from the Demoneris Defendants, thus increasing the amount of legal work to be performed.  (*See* Reply Aff. of Michael C. Delaney dated Feb. 20, 2020 ("Delaney Reply Aff."), attached to Mot., Dkt. No. 134 ¶ 5; *see also* Colonial's 56.1 Stmt. ¶¶ 7, 11–12; Demoneris Defs.' 56.1 Stmt. ¶ 7).[9]  Colonial provided all of its invoices and billing records to the Demoneris Defendants, (Delaney Reply Aff. ¶ 7; Cover Letter dated Mar. 13, 2019 ("Production Letter"), attached as Ex. N to Delaney Reply Aff., Dkt. No. 134).  Furthermore, the Demoneris Defendants did not, in opposing the summary judgment motion, identify a single objection to any entry.  As such, the record contains no evidence on which to conclude that any legal fees were incurred in bad faith, and therefore there is no basis to deem them unreasonable.

Second, the Demoneris Defendants challenge Colonial's failure to provide documentation of its counsel's billing hours or billing rates. (Mem. in Opp'n at 5–9). The assertion is puzzling, in light of the fact that they have redacted copies of the actual invoices for the fees incurred.  (*See* Production Letter).  In any event, such an argument has no traction under the Indemnity Agreement, which entitles Colonial to provide "other evidence," such as the Nunziata Affidavit, to demonstrate that Colonial paid the

---

[9] In any event, a surety's right to reimbursement under a broad indemnity clause, like the one contained in the Indemnity Agreement, is far ranging. *Colonial Sur. Co.*, 2014 WL 3929159, at *3–4 (finding that an indemnity agreement providing for indemnification of "expenses of whatever nature or kind, including all fees of attorney and all other expenses" covered attorneys' fees connected with litigating a surety bond).

expenses incurred.  (*See* Indemnity Agreement ¶ 4(D)).  The Demoneris Defendants are not entitled to the underlying billing records or rates under the Agreement.[10]

The Court thus finds that the Demoneris Defendants have not raised any genuine disputes of material fact as to the good faith or reasonableness of Colonial's payments and indemnification for those payments.  Some adjustments, however, are required:

1.  The attorney's fees total in the Nunziata's affidavit is $330 lower than the total in the Itemized Statement of Loss.  (*Compare* Nunziata Aff. ¶ 19 (indicating $303,362.79), *with* Itemized Statement of Loss at 1 (indicating $303,692.79)).  Because the Court only uses the Nunziata Affidavit as *prima facie* evidence, it finds that Colonial is entitled only to $303,362.79 in attorney's fees.

2.  With respect to accounting services, the Nunziata's affidavit states "Colonial has paid [MDD] $12,990.84 for accounting services rendered October 1, 2013 through June 30, 2019 in this *and other Telentos-related matters*."  (Nunziata Aff. ¶ 22 (emphasis added); *accord* Colonial's 56.1 Stmt. ¶ 15).  Colonial is only entitled to reimbursement for expenses "incurred in prosecuting or defending any action arising out of or relating to this Agreement or other Contract with Indemnitor."  (Indemnity Agreement ¶ 4(D)–(E)).  The Court agrees with the Demoneris Defendants that without knowing what "Telentos-related matters" means, (Demoneris Defs.' 56.1 Stmt. ¶¶ 13–

_____

[10] The contention that the Demoneris Defendants lacked personal knowledge of Colonial's expenses, (*see* Demoneris Defs.' 56.1 Stmt. ¶¶ 11–18), fails for a similar reason: under the Indemnity Agreement, it was Colonial's right to incur attorney's fees and costs it deemed necessary or advisable, (Indemnity Agreement ¶ 4(C)).  Approval or notice of expenses is not a prerequisite to indemnification.  (*Id.*)  Likewise, the Demoneris Defendants' argument that the Court should apply the Rules of Professional Responsibility is untethered to the Indemnity Requirement.  To the extent that their argument is that a violation of such Rules is indicative of bad faith, nothing in the record indicates there was a violation of any such Rule.

15), there is a genuine dispute of fact as to which accounting consulting fees are recoverable.

3.  With respect to deposition expenses, Colonial has submitted two itemized deposition-related payments, (Itemized Statement of Loss at 2), which are supported by an affidavit of officer of Colonial, (Nunziata Aff. ¶ 23).  The Itemized Statement of Loss includes a $442.00 credit, but the affidavit does not.  (*Compare id.*, *with* Itemized Statement of Loss at 2).  Indemnification cannot be given for more than has been paid, and so the Court finds that Colonial has submitted *prima facie* evidence of payment for $1,566.80 in litigation-related expenses: $2,008.80 in deposition fees, less the applied credit.

CONCLUSION

For these reasons, Colonial's motion for partial summary judgment on the Third Count is granted, in part, and the Demoneris Defendants must indemnify Colonial for a total of $304,929.59 in fees and costs, which consists of $303,362.79 in attorney's fees and $1,566.80 in deposition fees.  If Colonial wishes to have a trial on the remaining expenses, namely the accounting expenses, it should notify the Court within 14 days of the entry of judgment.  It shall also notify the Court by 14 days whether it intends to prosecute the remaining claims, or whether those claims can be dismissed with prejudice in light of the grant of summary judgment on the Third Count of the Third-Party Complaint.

SO ORDERED.

*/s/ Sanket J. Bulsara* October 20, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York